IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JENNIFER BERGMAN, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:16-CV-03596 |
| | § | |
| NANCY A. BERRYHILL, | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER ON MOTIONS
FOR SUMMARY JUDGMENT**

Plaintiff Jennifer Bergman ("Plaintiff, "Bergman") has filed this case under Social Security Act, 42 §§ 405(g) seeking review of Defendant Nancy A. Berryhill's ("Defendant, "Commissioner")[1] decision denying her request for social security benefits. Cross-motions for summary judgment have been filed by both parties. (Plaintiff's Brief in Support of Motion for Summary Judgment ["Plaintiff's Motion"], Docket ["Dkt."] 10; Defendant's Cross-Motion for Summary Judgment, Dkt. 8; Defendant's Brief in Support of Cross-Motion for Summary Judgment ["Defendant's Motion"], Dkt. 9). Each party has also filed a response to the competing motions. (Defendant's Response to Plaintiff's Motion for Summary Judgment ["Defendant's Response"], Dkt. 11; Plaintiff's Response to Defendant's Cross Motion for Summary Judgment ["Plaintiff's Response"], Dkt. 12). After considering the pleadings, the record, and the applicable law, it is **ORDERED** that Defendant's motion is **GRANTED**, and that Plaintiff's motion is **DENIED**.[2]

---

[1] This suit was filed against Defendant in her capacity as Acting Commissioner of the Social Security Administration ("SSA").
[2] On January 10, 2018, the parties consented to proceed before a United States Magistrate judge for all purposes, including the entry of a final judgment under 28 U.S.C. §636 (c). (Dkt. 14).

1

## I. Background

### 1. Factual and Administrative History

On November 23, 2013, Plaintiff Jennifer Bergman filed applications for both Supplemental Security Income ("SSI") benefits, under Title XVI of the Social Security Act ("the Act"), and for Social Security Disability Insurance Benefits ("DIB") under Title II of the Act. (Administrative Transcript ["Tr."] at 23, 334-61, 434-35; Dkt. 6). In her applications, Bergman alleges that she has been unable to work since May 27, 2013, due to a right knee injury, migraine headaches, disorders of the back (discogenic and degenerative), and "affective/mood disorders." (Tr. at 27, 334, 335, 348, 349). On July 11, 2014, the Commissioner denied her applications for benefits. (Tr. at 362-66). Plaintiff's claims were denied, again, upon reconsideration, on August 20, 2014. (Tr. at 362-66). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. at 372-73). That hearing took place on May 22, 2015, before ALJ D'Lisa Simmons. (Tr. at 283-333). Plaintiff appeared with her attorney, and she testified in her own behalf. The ALJ also heard testimony from a vocational expert witness, Ms. Cheryl Swisher, ["Ms. Swisher"]. (Tr. at 326-32). No medical experts testified at the hearing.

The ALJ issued an unfavorable decision on July 10, 2015. (Tr. at 20-40). On July 29, 2015, Plaintiff requested an Appeals Council review of the ALJ's decision.[3] (Tr. at 19). The Appeals Council denied Bergman's request on October 21, 2016, finding that no applicable reason for review existed. (Tr. at 1-6). With that ruling, the ALJ's decision became final. *See* 20 C.F.R. §§ 404.984(b)(2) and 416.1484(b)(2). On December 7, 2016, Plaintiff filed this lawsuit

---

[3] SSA regulations provide that the Appeals Council will grant a request for a review if: (1) "there is an apparent abuse of discretion by the ALJ;" (2) "an error of law has been made;" (3) "the ALJ's action, findings, or conclusions are not supported by substantial evidence;" or if (4) "there is a broad policy issue which may affect the public interest." 20 C.F.R. §§ 404.970 and 416.1470.

challenging that decision, pursuant to section 205(g) of the Act (codified as amended at 42 U.S.C. § 405(g)). (Dkt. 1).

2. **Standard of District Court Review**

Section 405(g) of the Act governs the standard of review in disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). The Commissioner's decision to deny Social Security benefits is reviewed by the federal courts to determine "(1) whether substantial evidence supports the Commissioner's decision[;] and (2) whether the Commissioner's decision comports with relevant legal standards." *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).

With respect to all decisions other than conclusions of law,[4] "[i]f the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence has also been defined as "more than a mere scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). When reviewing the Commissioner's decision, the court does not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id*. The courts strive for judicial review that is "deferential without being so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

---

[4] Conclusions of law are reviewed *de novo*. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

The court weighs four types of evidence in the record when determining whether there is substantial evidence of disability: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Hamilton-Provost v. Colvin*, --- F. App'x ----, 2015 WL 925728, at *3 (5th Cir. 2015).

### 3. Disability Determination Standards

The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing 42 U.S.C. § 423(d)(1)(A)). A finding at any point in the five-step sequence that the claimant is disabled or not disabled ends the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity." Work is "substantial" if it involves doing significant physical or mental activities, and "gainful" if it is the kind of work usually done for pay or profit. 20 C.F.R. §§ 404.1572, 416.972; *Copeland*, 771 F.3d at 924.

In the second step, the ALJ must determine whether the claimant has a severe impairment. Under applicable regulations, an impairment is severe if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.20(c). The Fifth Circuit construes these regulations as setting forth the following standard: an impairment can be considered "not severe" only if it is a "slight abnormality having such minimal effect on

the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101-02 (5th Cir. 1985).

If the claimant is found to have a severe impairment, the ALJ proceeds to the third step of the sequential analysis: whether the severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets one of the listings in Appendix 1, the claimant is disabled. If the ALJ finds that the claimant's symptoms do not meet any listed impairment, the sequential analysis continues to the fourth step.

In step four, the ALJ must decide whether the claimant can still perform his past relevant work by determining the claimant's "residual functional capacity" (RFC). "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 Fed. Appx. 241, 245 (5th Cir. 2011) (citing 20 C.F.R. 404.1545). The ALJ must base the RFC determination on the record as a whole and must consider all of a claimant's impairments, including those that are not severe. *Id.*; 20 C.F.R. §§ 404.1520(e) and 404.1545; s*ee also Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).

The claimant bears the burden to prove disability at steps one through four, meaning the claimant must prove she is not currently working and is no longer capable of performing her past relevant work. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). If the claimant meets her burden, the burden shifts to the commissioner at step five to show that the "claimant is capable of engaging in some type of alternative work that exists in the national economy." *Id*. Thus, in order for the Commissioner to find in step five that the claimant is not disabled, the record must contain evidence demonstrating that other work exists in significant numbers in the national

economy, and that the claimant can do that work given her RFC, age, education, and work experience. *Fraga v. Brown*, 810 F.2d 1296, 1304 (5th Cir. 1998).

### 4. The ALJ's Decision

Based on these principles, as well as her review of the evidence presented at the hearing, the ALJ determined that Plaintiff meets the insured status requirements of the SSA through December 31, 2018, and that she has not "engaged in substantial gainful activity" since May 27, 2013. (Tr. at 25). The ALJ further concluded that Bergman suffers from "degenerative disc disease of the cervical spine and cervicalgia;[5] complex regional pain syndrome;[6] chondromalacia[7] of [the] patella status post right knee injury; reflex sympathetic dystrophy[8] of the upper limb; morbid obesity; major depressive disorder; and generalized anxiety disorder." (Tr. at 25). Although she determined that these impairments are severe she concluded, ultimately, that Plaintiff's impairments do not meet, or equal in severity, the medical criteria for any disabling impairment in the applicable SSA regulations. (Tr. at 26). The ALJ then assessed Bergman's residual functional capacity ("RFC"), and found that:

> The claimant has the [RFC] to perform sedentary work[,] as defined in 20 CFR [§§] 404.1567(a) [, with an ability to] lift, carry, push, and pull . . . 10 pounds . . . frequently; . . . sit for six hours in an eight-hour day, but . . . stand or walk for

---

[5] "Cervicalgia" is neck pain that occurs toward the rear or side of the cervical spinal vertebrae. It is generally felt as discomfort or a sharp pain in the neck, upper back, or shoulders. Cervicalgia – overview of causes, symptoms and treatments, https://www.laserspineinstitute.com/back_problems/neck_pain/overview/cervicalgia/ (last visited January 10, 2018).

[6] "Complex Regional Pain Syndrome" is a chronic pain condition that most often affects one limb (arm, leg, hand, or foot), usually after an injury. The condition is believed to be caused by damage to, or malfunction of, the peripheral and central nervous systems. Complex Regional Pain Syndrome Fact Sheet, https://www.ninds.nih.gov/Disorders/Patient-Caregiver-Education/Fact-Sheets/Complex-Regional-Pain-Syndrome-Fact-Sheet (last visited January 10, 218).

[7] "Chondromalacia" is the softening of cartilage. MOSBY'S MEDICAL, NURSING, & ALLIED HEALTH DICTIONARY 328 (5th ed. 1998).

[8] "Reflex sympathetic dystrophy" or "RSD" is a diffuse, persistent pain involving central reorganization of sensory processing. It is characterized by limited joint mobility and trophic changes. *Id.* at 1396.

only two hours a day[,] each[,] intermittently, throughout the eight-hour day. The claimant is limited to frequent reaching with the right upper extremity; occasional crouching, crawling, kneeling, and climbing of stairs or ramps; frequent stooping; and no use of scaffolding, ropes, or ladders. There should be no hazardous work environment[s] involving [the] use of dangerous machinery or exposure to unprotected heights, and no driving required of the job functions. . .[D]ue to chronic use of narcotic pain medications, as well as moderate restrictions in concentration, persistence, and pace, [the claimant] would be limited to performing simple, routine, repetitious work with one, two, or three step instructions in an environment requiring few decisions. There should be only occasional interaction with coworkers and supervisors, and no contact with the general public. There should be no fast-production pace and no strict production quotas.

(Tr. at 29). Based on the medical records and the testimony of the vocational expert, Ms. Swisher, the ALJ determined that Bergman is not capable of performing her past relevant work as a commercial banking officer or a loan officer. (Tr. at 33). However, she found that she could perform other work that exists in significant numbers in the local and national economies, including such jobs as a surveillance system monitor and a clerical sorter. (Tr. at 34). For that reason, the ALJ concluded that Bergman is not under a disability as defined by the Social Ssecurity Act and denied her applications for benefits. (Tr. at 35).

## II.    Analysis

Plaintiff challenges the Commissioner's decision on three grounds. She claims first that the ALJ improperly considered the effects of her impairments in assessing her residual functional capacity. (Dkt. 10 at 4–8). On that point, she makes four arguments. At the outset, she alleges that the ALJ declined to obtain medical expert testimony to "interpret her complex medical conditions." (*Id*. at 6). Plaintiff argues further that the ALJ failed to examine the impact of her obesity and the side effects of her medication in determining that she is not disabled. (*Id*. at 7-8). Plaintiff also contends that the ALJ erred in evaluating her credibility. (*Id*. at 9-11). In her final

argument, Plaintiff complains that the ALJ's step-five findings are not supported by substantial evidence, because those findings were tainted by inaccurate evaluations of her residual functional capacity ("RFC") and her credibility. (*Id*. at 11-12). On that point, Plaintiff maintains that that the ALJ failed to determine whether she could obtain and maintain employment and neglected to complete a "function-by-function analysis" of her RFC. (*Id*.). Defendant responds that the ALJ properly considered all of the available evidence and followed the correct legal standard in determining that Bergman is not disabled under the Act, and therefore not entitled to an award of Social Security Income benefits. (Dkt. 9 at 4-7, 9-11; Dkt. 11 at 3).

**1. Residual Functional Capacity**

A claimant's residual functional capacity is her "remaining ability to work despite all of her limitations resulting from her impairment[s]." *Jones v. Astrue*, No. H-09-0656, 2010 WL 1404124, at * 10 (S.D. Tex. Mar. 31, 2010) (citing 20 C.F.R. § 404.1545). In evaluating the claimant's RFC, the ALJ must consider how the claimant's impairments affect her physical, mental, and other abilities, as well as the total limiting effects of her impairments. *Id.* The ALJ has the sole responsibility for determining a claimant's RFC based on the record as a whole. *See Villa*, 895 F.2d at 1023-24; 20 C.F.R. § 404.1545 (a)(3).

**1A. ALJ's Responsibility to Obtain a Medical Source Statement**

An ALJ has a duty to develop the facts fully and fairly relating to a claimant's application for disability benefits and should usually request a medical source statement describing the types of work that the applicant is still capable of performing. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir, 1995). However, decision to order a medical source statement or to obtain additional evidence is discretionary. *Lozoya v. Barnhart*, No. M-03-192, 2006 WL 2844236, at *8, 10 (S.D. Tex. Sept. 29, 2006) (citing *Ripley*, 67 F.3d at 557). Absent a medical statement regarding a

claimant's ability to perform work-related functions, the court's inquiry will focus on "whether the decision of the ALJ is supported by substantial evidence in the existing record." *Id*.

In this case, the RFC finding is supported by substantial evidence. The record shows that, in making her RFC assessment, the ALJ considered the objective medical evidence of Plaintiff's allegedly disabling cervicalgia, right knee pain, reflex sympathetic dystrophy, and complex regional pain syndrome, and found that the evidence indicated "only mild changes." (Tr. at 30-31). An MRI of the cervical spine, dated February 24, 2012, revealed minimal degenerative changes and no sign of spinal cord abnormalities. (Tr. at 542, 629, 738). An electromyography[9] and arthrogram[10] of Bergman's right arm, dated August 14, 2012, returned normal results. (Tr. at 562). An MRI of Plaintiff's right knee, dated May 29, 2013, indicated normal findings, with the exception of some superficial patellar irregularities and mild tendinitis in that joint. (Tr. at 545, 550, 628, 726). The record shows that the bulk of the objective medical evidence supports the ALJ's RFC finding.

The ALJ also considered Plaintiff's "self-reported improvement in pain and range of motion" when assessing her residual functional capacity. An impairment that can be reasonably remedied by medication or treatment is not disabling and does not affect RFC. *Acosta v. Astrue*, 865 F.Supp.2d 767, 791 (W.D. Tex. 2012). Here, the ALJ specifically noted that Bergman reported improvement in her cervical pain following the implantation of a spinal cord stimulator. (Tr. at 30). In fact, Plaintiff consistently reported experiencing between 50%-80% improvement in her symptoms, after the SCS procedure. (*See, e.g.* Tr. at 69, 176-77, 180-81, 775, 914, 1019). On multiple occasions, most recently in November 2015, Bergman stated that the spinal cord

---

[6] An "electromyography" is a test that records intrinsic electrical activity in the skeletal muscles. *Id*. at 545.

[10] An "arthrogram" is a radiogram of a joint after the injection of a contrast medium. *Id.* at 127.

stimulator had been "controlling her pain well[.]"[11] (Tr. at 54, 793, 795, 803-05, 997-99). With narcotic medication, Bergman experienced up to 90% relief. (Tr. at 671, 784). At the hearing, Bergman testified that her pain had subsided with medication and a spinal cord stimulator. (Tr. at 297, 311). Plaintiff also reported that the range of motion and pain in her shoulder were alleviated by treatment with corticosteroid injections and physical therapy. (Tr. at 546, 552, 572. 618, 909). Bergman admitted that her activity level had improved with medication, and even denied that her pain had significantly impacted her daily functions. (Tr. at 173, 177, 911). She later described her pain as "well stabilized" on a low dose opioid regimen, and "manageable with pain medication and [a] walker." (Tr. at 54, 175, 870). On this record, Plaintiff's alleged symptoms appear to be significantly alleviated by medical treatment, and therefore do not justify imposing further restrictions on her RFC. *See Hernandez v. Shalala*, No. 94-50135, 1994 WL 685062, at *3 (5th Cir. 1994) (*per curiam*) (holding that ALJ did not err in failing to obtain testimony from vocational expert because substantial evidence supported the ALJ's RFC finding).

**1B. Obesity**

Obesity, when combined with other ailments, can reduce an individual's functional capacity for work activity, and thus should be considered in making the residual functional capacity determination. *Beck v. Barnhart*, 205 Fed. Appx. 207, 211 (5th Cir. 2006). In assessing RFC, an ALJ should consider the impact of obesity on a claimant's exertional limitations, as well as its effect upon the claimant's ability "to perform routine [and] . . . necessary physical activity within a work environment[,] . . . over time." SSR 02-1p. Those individuals suffering from

---

[11] On March 20, 2014, Bergman complained that the SCS had not been effective in controlling her pain. (Tr. at 801, 1001). However, during that visit, Dr. Parris noted that her depression did not appear to be controlled, and explicitly informed her that failure to care for her mental health would likely result in perceptions of more intense symptoms. (Tr. at 801, 1001).

obesity may experience greater limitations than those without the condition. For example, an individual with "obesity and arthritis [in] a weight-bearing joint may have [a greater] limitation than [an individual suffering from] arthritis alone." *Id*.

Here, the ALJ explained that she specifically considered Plaintiff's obesity in limiting her to sedentary work. (Tr. at 31). She acknowledges that Plaintiff's obesity had a "multiplier effect[,]" in that it exacerbated her existing back and leg pain. *Beck*, 205 Fed. Appx. at 211; (*See* Tr. at 31). The ALJ states, expressly, that Bergman's obesity "likely produced or contributed to [her] symptoms of [the] back, knee, [and] other musculoskeletal pain," as well as to her "limited mobility and [decreased] stamina." (Tr. at 31). Bergman's claim that the ALJ "failed to engage in meaningful analysis as required by SSR 02-1p" is without merit. (Dkt. 10 at 8). She has not pointed to any evidence which indicates that her obesity imposes functional limitations beyond those acknowledged in the ALJ's RFC assessment.[12] On this point, the ALJ did not err.

**1C. Side Effects of Medication**

The law is clear that, in assessing RFC, an ALJ should consider any side effects that "could render a claimant disabled or at least contribute to a disability." *Loza v. Apfel*, 219 F.3d 378, 397 (5th Cir. 2000); 20 C.F,R. § 404.1529 (c)(3)(v). On this record, however, there is little evidence that Bergman suffers from significant side effects because of her medication. At the hearing, Plaintiff testified that she is "not allowed to drive," because of her medications. (Tr. at 310). In addition, a medical record, dated April 30, 2014, shows that she "did not feel like she could drive while on her pain medication[.]" (Tr. at 856). The ALJ also noted that Plaintiff claims to "'lose . . . track of time' due to [the] side effects from [her] narcotic pain medication."

---

[12] In her motion, Plaintiff points to several medical records as support for her assertion that her obesity prevents her from working at a sedentary level. (Dkt. 10 at 8) (citing Tr. at 552, 562, 771, 886, 991). However, those medical records merely diagnose Plaintiff as suffering from obesity. They do not provide any evidence that her obesity had an impact on her pain.

(Tr. at 30). However, there is no objective medical evidence in the record that side effects from her medication were sufficiently significant to prevent Bergman from performing the duties that are required of a surveillance system monitor or a clerical sorter. *Cagle v. Colvin*, No. H-12-0296, 2013 WL 2105473, at *8 (S.D. Tex. May 14, 2013) (finding subjective complaints regarding nature of side effects insufficient to require remand). The ALJ, nevertheless, included limitations in the RFC assessment that explicitly provide for Plaintiff's "chronic use of narcotic pain medication . . . [.]" (Tr. at 29). The ALJ limited Bergman to "performing simple, routine, repetitious work with one, two, or three step instructions in an environment requiring few decisions[,]" "occasional interaction with co-workers and supervisors," "no contact with the general public[,]" and "no fast-production pace [or] strict production quotas." (*Id.*). Plaintiff has not presented any evidence to show that the stated limitations are inadequate to accommodate the side effects that she suffers due to the use of her medication.

Even had the ALJ not addressed the specific side effects of her medication, Bergman's claim cannot succeed unless she shows that she was prejudiced by the ALJ's error. *See Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981). As the Fifth Circuit has explained, "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required." *Newton*, 209 F.3d at 459 (quoting *Hall*, 660 F.2d at 119 (5th Cir. 1981)). "If prejudice results from the violation, the result cannot stand." *Id.* In social security cases, a claimant establishes prejudice by showing that, absent the error, the ALJ might have reached a different conclusion. *See id.* at 453; *Ripley*, 67 F. 3d at 557 n.22. Here, Bergman has not shown that the side effects of her medication were severe enough to compel the ALJ to render a finding of disabled. *See Newton*, 209 F.3d at 458.

**1D. Credibility Assessment**

In any disability determination, the ALJ "must consider a claimant's subjective symptoms as well as objective medical evidence," in evaluating a claimant's functional limitations. *Hudson v. Astrue*, No. 10-cv-3823, 2012 WL 844992, * at 13 (S.D. Tex. Feb. 16, 2012); 20 C.F.R. § 404.1529. However, there is no question that an ALJ has discretion to weigh the credibility of the testimony presented, and that her judgment on what weight to ascribe to it is entitled to considerable deference. *Slaughter v. Astrue*, 857 F.Supp.2d 631, 643 (S.D. Tex. 2012). An ALJ may accept or reject a claimant's subjective statements, as long as the reasons for so doing are made clear. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). For example, she may find that the claimant's subjective complaints are "not credible," or she may find the medical evidence to be "more persuasive than the claimant's own testimony." *Id.* "[A claimant's] subjective complaints must be corroborated at least in part by objective medical testimony." *Brown v. Astrue*, 2012 WL 9392190, at *8 (S.D. Tex. 2012); *accord* 20 C.F.R. §§ 404.1528(a), 404.1529. If there are conflicts between a claimant's subjective complaints and the objective medical evidence, the ALJ must evaluate the claimant's credibility. *See* 20 C.F.R. § 404.1529; *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988). In doing so, the ALJ must consider such factors as stated activities of daily living, current treatment, medication and any side effects, or other methods of alleviating pain to determine the limiting effects of any impairment or symptomology on the claimant's ability to work. *See* 20 C.F.R. § 404.1529; *Hollis*, 837 F.2d at 1385.

In this case, the Plaintiff told the ALJ that she is unable to shower, cook, groom or dress herself, use the restroom, or drive without assistance. (Tr. at 309, 320, 321). She said that she has a caregiver who helps her with those tasks. (*Id.*). She also testified that she has a service dog that

retrieves dropped items, alerts her when visitors arrive, and helps her stand. (Tr. at 290). She reported that she is unable to lift items without experiencing discomfort, and that she no longer performs housework. (Tr. at 314, 320). She also stated that she can only walk one block, and that she can sit no longer than thirty minutes. (Tr. at 314, 315). Plaintiff explained that she is unable to walk through large grocery stores, but that she is able to navigate smaller stores independently. (Tr. at 321-22).

In her decision, the ALJ generally refers to Plaintiff's testimony regarding her daily activities. (Tr. at 27-28, 29-30). In evaluating that testimony, she found that Bergman's statements "cannot be objectively verified with any reasonable degree of certainty[,]" and highlighted those medical records conflicting with Plaintiff's testimony regarding the severity of her impairments. (Tr. at 27). The benign nature of the objective assessments referenced suggests that Plaintiff's claims are exaggerated. For instance, the ALJ pointed to medical records that reveal only mild degenerative changes of the spine, as well as physical examinations that indicate normal motor strength and range of motion in her shoulder, spine, and hip. (Tr. at 30). She also took note of medical records indicating improvement in the pain in her right shoulder and knee, with medication and physical therapy. (Tr. at 30, 854, 872). She also noted that there is no indication that Plaintiff's caregiver and service dog were "medically necessary." (*Id*.). Although Plaintiff's subjective complaints provide some evidence of impairment, without corroborating medical records, the ALJ did not err by crediting scant weight to Bergman's allegations. *See Brown*, 2012 WL 9392190, at *8.

The ALJ later underscored medical records showing Bergman consistently consumed alcohol while on narcotic medication, contrary to Bergman's testimony that she "only drinks a few 'sips' during the week." (Tr. at 33). The ALJ explained that she found Plaintiff's "credibility

and the genuineness of her symptoms [to be] questionable[,]" in light of her alcohol use. (*Id*.). She reasoned that Plaintiff's alcohol intake "may reasonably exacerbate [her] physical and mental symptoms[.]" (*Id*.). Although the record is replete with Bergman's subjective complaints regarding the intensity of her symptoms, there is substantial evidence to support the ALJ's conclusion that Bergman's limitations were not as severe as she alleged. As a result, the ALJ's credibility assessment need not be disturbed. *See* 20 C.F.R. § 404.1529; *Hollis*, 837 F.2d at 1385. For these reasons, the ALJ's residual functional capacity assessment is supported by substantial evidence.[13]

### 2. Step Five Finding[14]

The Fifth Circuit has made clear that an ALJ is not required in every case to make a separate finding that a social security claimant, who is capable of performing a job, will also be able to maintain that job. *See Perez*, 415 F.3d at 465; *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). However, the court has noted that, "[n]evertheless, an occasion may arise . . . where the medical impairment, and the symptoms thereof, is of such a nature that separate consideration of whether the claimant is capable of maintaining employment is required." *Id*. (citing *Watson v. Barnhart,* 288 F.3d 212, 217-18 (5th Cir. 2002)). Such a circumstance arises if, "by nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Id*. Mere evidence of "good days and bad days," however, does not of itself establish that an impairment is sufficient to require an explicit finding on ability to maintain employment. *See Perez*, 415 F.3d at 465.

---

[13] It is well established that an RFC evaluation is "an assessment of an individual's ability to do sustained work-related physical and mental activities, meaning eight hours a day for five days a week." SSR 96-8pp at 1, 2. In this case, the ALJ's RFC determination is, in itself, a function-by-function analysis describing various limitations, including Bergman's ability to sit, stand, reach, crouch, crawl, kneel, climb, concentrate, interact with other people, and comply with a certain production pace or quota requirement. (Tr. at 29). Plaintiff's claim that this issue requires further assessment at step five has no merit. (*See* Dkt. at 11-12).

[14] Because the ALJ appropriately assessed Bergman's RFC, her contention that the ALJ's step five finding is flawed as a result of an error at step four need not be addressed. (*See* Dkt. 10 at 11).

Here, the record shows that Bergman suffers from chronic pain in her cervical and lumbar spine, right shoulder, and right knee that fluctuates in intensity. However, Plaintiff has not shown that her ailments, by their very nature, truly "wax and wane." *Cf Pennington v. Astrue*, No. H-08-3616, 2010 WL 648413, at *24 (S.D. Tex. Feb. 23, 2010) (holding that ALJ had duty to determine claimant's ability to maintain employment given "the nature of fibromyalgia and chronic fatigue syndrome"); *Quintanilla v. Astrue*, 619 F.Supp.2d 306, 324-25 (S.D. Tex. 2008) (ALJ had duty to make express finding of ability to work on regular and continuous basis when claimant diagnosed with HIV, PTSD, and antisocial personality disorder). Certainly, the mere assertion that pain varies in intensity or "waxes and wanes" is simply not sufficient to require a finding on ability to sustain employment. "'It is axiomatic that the pain from any type of ailment will vary in intensity, especially the farther one gets from treatment that alleviates pain.'" *McGhee v. Astrue*, No. H-10-575, 2011 WL 11048325, at *6 (S.D. Tex. Feb. 25, 2011). Although Plaintiff testified that she has as many "good days" as she has "bad days[,]" she conceded that her pain has subsided with medication and a spinal cord stimulator. (Tr. at 297, 311). Moreover, there is no evidence in the record to support a claim that, during those times when Bergman's pain worsened, she was so limited that she was unable to perform any work. *See Wise v. Barnhart*, 101 Fed. Appx. 950, 951-52 (5th Cir. 2004) (finding that plaintiff did not assert that his condition would intermittently prevent him from maintaining employment or functioning in employment context in upholding decision to deny disability benefits). In this case, then, the ALJ had no duty to consider whether Bergman would be "capable of maintaining employment." *Frank*, 326 F.3d at 619; *Watson*, 288 F.3d at 217-18. As a result, she committed no error by failing to do so. *See id.*

### III. Conclusion

Based on the foregoing, it is **ORDERED** that Defendant's motion for summary judgment is **GRANTED**, and that Plaintiff's motion for summary judgment is **DENIED**.

**SIGNED** at Houston, Texas, this 29th day of January, 2018.

_____
Christina A. Bryan
United States Magistrate Judge